**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| KALEASY TECH LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-2167-CFC-SRF |
| | ) | |
| SLACK TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

**I.     INTRODUCTION**

Presently before the court is defendant Slack Technologies, Inc.'s ("Defendant") renewed motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss plaintiff Kaleasy Tech LLC's ("Plaintiff") action for patent infringement.[1]  (D.I. 16)  For the following reasons, I recommend that the court GRANT the pending motion to dismiss with prejudice.

**II.    BACKGROUND**

Plaintiff filed this suit on November 20, 2019, alleging infringement of at least claims 1 and 3 of U.S. Patent No. 7,899,479 ("the '479 patent").  (D.I. 1 at ¶ 15-17)  The '479 patent, entitled "Method, System and Apparatuses For Sharing Presence Information," issued on March 1, 2011 and expired on April 8, 2019 due to non-payment of the maintenance fees under 37 C.F.R. § 1.362.[2]  (D.I. 14 at ¶ 10; D.I. 18, Exs. A & B)

---

[1] The briefing and related filings associated with the pending motion are found at D.I. 17, D.I. 18, D.I. 19, D.I. 21, and D.I. 23.

[2] Defendant asks the court to take judicial notice of the Application Data and the Transaction History for the '479 patent, which show that the '479 patent expired on April 8, 2019.  (D.I. 19; D.I. 18 at Exs. A &B)  Plaintiff does not object to the court's consideration of these documents on a motion to dismiss, nor does Plaintiff challenge Defendant's assertion that the '479 patent expired on April 8, 2019.  (D.I. 21)  Federal Rule of Evidence 201(b) provides that a court may take judicial notice of "a fact that is not subject to reasonable dispute because it ... can be accurately and readily determined from sources whose accuracy cannot reasonably be

The '479 patent is directed to a method, system, and apparatuses for sharing presence information.  ('479 patent, Abstract)  Independent claim 1 of the '479 patent recites:

**1.** A method for sharing presence information, comprising:

> acquiring, by one of a group server, a presence server and a presence information management apparatus connected to the group server and the presence server, group presence information comprising basic group information and presence information of at least one group member in a group provided by the group server; wherein the basic group information is from the group server and comprises a group attribute, a group member list and a group member attribute, the presence information of at last one group member is from the presence server; and
>
> sending, by the one of the group server, the presence server and the presence information management apparatus, the group presence information to a group member.

('479 patent, col. 15:64-16:11)  Claim 3 of the '479 patent recites the method of claim 1, "wherein the process of acquiring group presence information comprises: acquiring presence information of a group member if the presence information of a group member changes."  ('479 patent, col. 16:16-19)

Defendant moved to dismiss the complaint on January 27, 2020, and Plaintiff responded by filing its first amended complaint on February 14, 2020.  (D.I. 14)  In the first amended complaint, Plaintiff alleges that Defendant commercializes methods that perform all the steps recited in at least claims 1 and 3 of the '479 patent by offering its "Slack Software" and other products enabling a method of sharing and storing presence information.  (*Id.* at ¶¶ 22-34)  Defendant filed the instant motion to dismiss the first amended complaint on February 26, 2020,

---

questioned.").  Fed. R. Evid. 201(b); *see Werner v. Werner*, 267 F.3d 288, 295 (3d Cir. 2001) ("A court may take judicial notice of an adjudicative fact if that fact is not subject to reasonable dispute.").  The court may properly take notice of the Application Data and Transaction History for the '479 patent, which are publicly available on the United States Patent and Trademark Office's Public Patent Application Information Retrieval ("Public PAIR") database.

2

alleging that the claims of the '479 patent are directed to unpatentable subject matter pursuant to 35 U.S.C. § 101. (D.I. 16; D.I. 17)

### III. LEGAL STANDARDS

#### A. Failure to State a Claim

Defendant moves to dismiss the pending action pursuant to Rule 12(b)(6), which permits a party to seek dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). According to Defendant, Plaintiff's amended complaint fails to state a claim because the asserted claims of the '479 patent are ineligible for patent protection under 35 U.S.C. § 101. Patent eligibility under 35 U.S.C. § 101 is a threshold test. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Therefore, "patent eligibility can be determined at the Rule 12(b)(6) stage . . . when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *Umland v. PLANCO Fin. Servs. Inc.*, 542 F.3d 59, 64 (3d Cir. 2008) (citing *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)). Dismissal under Rule 12(b)(6) is only appropriate if the complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). However, "a court need not 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit,' such as the claims and the patent specification." *Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873

F.3d 905, 913 (Fed. Cir. 2017) (quoting *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 931 (Fed. Cir. 2014)).

### B.  Patent-Eligible Subject Matter

Section 101 of the Patent Act provides that patentable subject matter extends to four broad categories: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101.  The Supreme Court recognizes three exceptions to the subject matter eligibility requirements of § 101: laws of nature, physical phenomena, and abstract ideas.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014).  The purpose of these exceptions is to protect the "basic tools of scientific and technological work," *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 86 (2012), which are "part of the storehouse of knowledge of all men . . . free to all men and reserved exclusively to none." *Bilski*, 561 U.S. at 602 (internal quotation marks and citations omitted).

The Supreme Court articulated a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts."  *Alice*, 573 U.S. at 217; *see also Mayo*, 566 U.S. at 77-78.  At step one, the court must determine whether the claims are directed to one of the three patent-ineligible concepts.  *Alice*, 573 U.S. at 217.  If the claims are not directed to a patent-ineligible concept, "the claims satisfy § 101 and [the court] need not proceed to the second step." *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018).  If the claims are directed to a patent-ineligible concept, the court must proceed to the second step by identifying an "'inventive concept'—*i.e.*, an element or combination of elements that is

'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Alice*, 573 U.S. at 217-18 (quoting *Mayo*, 566 U.S. at 72-73).

At step one, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015); *see also Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) ("The 'abstract idea' step of the inquiry calls upon us to look at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter."). However, "courts must be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016) (internal quotation marks omitted). "At step one, therefore, it is not enough to merely identify a patent-ineligible concept underlying the claim; [courts] must determine whether that patent-ineligible concept is what the claim is 'directed to.'" *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1050 (Fed. Cir. 2016).

At step two, the court must "look to both the claim as a whole and the individual claim elements" to determine whether they "amount[ ] to significantly more than a patent upon the ineligible concept itself." *McRO*, 837 F.3d at 1312. "Simply appending conventional steps, specified at a high level of generality, [is] not enough to supply an inventive concept." *Alice*, 573 U.S. at 222 (internal quotation marks omitted). Instead, the claim elements must "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1367 (Fed. Cir. 2018) (citation and internal quotation marks omitted); *see also Mayo*, 566 U.S. at 73. "The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art. .

5

. . [A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016).

IV.  **DISCUSSION**

    A.  **Patent Eligibility Under 35 U.S.C. § 101**

Defendant identifies claim 1 of the '479 patent as representative, and Plaintiff does not dispute Defendant's characterization of claim 1 as representative. (D.I. 17 at 5; D.I. 21 at 7) Thus, the court will treat claim 1 of the '479 patent as representative. *See Berkheimer*, 881 F.3d at 1365 ("Courts may treat a claim as representative . . . if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative.").

        1.  *Alice* **step one**

In support of the motion to dismiss, Defendant contends that the '479 patent is directed to the abstract idea of "sharing information, such as availability, about a group of individuals," and the claims offer no concrete improvement to computer technology. (D.I. 17 at 9-11) Describing the asserted claims as a method of organizing human activity, Defendant compares claim 1 of the '479 patent to an "in-out" magnet board showing a doctor's availability. (*Id.* at 10) Defendant argues that Plaintiff does not identify any non-generic computer components or claim limitations explaining how to carry out the steps of "acquiring" and "sending" data. (D.I. 23 at 1)

In response, Plaintiff alleges that the '479 patent is not directed to the abstract idea of "sharing information," but instead claims a specific method of sharing presence information by using one of a group server, a presence server, and a presence information management apparatus to obtain the group and presence information and send the information to a member of

6

the group.  (D.I. 21 at 7)  In this regard, Plaintiff contends that the asserted claims of the '479 patent claim a new device to perform a role previously managed through multiple, separate prior art servers, thereby increasing the efficiency and reducing authorization restrictions required by the prior art systems.  (*Id.* at 7-9)

Representative claim 1 of the '479 patent is directed to the abstract idea of sharing information about a group of individuals.  *See Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1313-14 (Fed. Cir. 2016) (concluding that claims directed to a method of receiving e-mail content, characterizing the content of the e-mails, and communicating the characterization via e-mail filters was abstract).  The preamble to claim 1 of the '479 patent is broadly worded as a "method for sharing presence information[.]"  ('479 patent, col. 15:64-65); *see Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1340 (Fed. Cir. 2017) (noting that it was not error for the district court to cite "to the preamble in its review of whether the claims are directed to an abstract idea" where the court's inquiry was "centered on determining the 'focus' of the claims").  The balance of representative claim 1 is also focused on sharing presence information, as the claim describes how this presence information is shared by acquiring group presence information and sending that information to a group member via "one of a group server, a presence server and a presence information management apparatus connected to the group server and the presence server."  ('479 patent, cols. 15:64-16:11)

According to Plaintiff, the claimed group server, presence server, and presence information management apparatus function to consolidate multiple actions previously performed by the prior art systems into "a single system, with a single device."[3]  (D.I. 21 at 9-10)

---

[3] Plaintiff argues that Defendant oversimplifies the claim language, contending that Defendant ignores the claimed "subscription module" and "presence information transmission module."

7

But the focus of the claim itself is not on the specific capabilities of the group server, the presence server, or the presence information management apparatus. Instead, the claim is drawn to the idea of sharing group presence information, which amounts to an abstract idea. *See Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1315 (Fed. Cir. 2019) (citing *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016); *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 610-12 (Fed. Cir. 2016)). The specification reiterates that "[e]mbodiments of the present invention provide a method for sharing presence information . . . which enable group members to share presence information conveniently." ('479 patent, col. 2:7-10) The specification describes the components of the associated server apparatuses without identifying how they function to reduce the number of steps required for sharing group presence information, supporting Defendant's position that these components are not the focus of the invention. (*Id.*, col. 2:23-58) Defendant's articulation of the abstract idea therefore accurately captures the focus of the claimed invention. *See Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1168 (Fed. Cir. 2019); *see also Elec. Power*, 830 F.3d at 1353.

Claim 1 of the '479 patent does not recite a specific improvement to technology that would otherwise remove it from the realm of abstract ideas. Associating the claimed method

---

(D.I. 21 at 8) But Plaintiff alleges that it is only "asserting claims 1 and 3 of the '479 patent," which do not contain the subscription module and presence information transmission module limitations. (D.I. 21 at 3; '479 patent, cols. 18:64-20:12) The focus of the patent eligibility inquiry under Section 101 is on the language of the asserted claims. *See Alice*, 573 U.S. at 218 ("We must first determine whether the claims *at issue* are directed to a patent-ineligible concept." (emphasis added)); *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016) ("The § 101 inquiry must focus on the language of the *Asserted Claims* themselves." (emphasis added)); *see also Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1327-28 (Fed. Cir. 2017) (concluding that claims were abstract where not all claims were limited to specific XML tags for searching a database using an index). Moreover, neither the patent specification nor Plaintiff's answering brief explains how these modules amount to a specific improvement to technology.

with tangible computer components does not render the claims patent eligible where, as here, those components are generic computer servers. *See TLI*, 823 F.3d at 612-13 (concluding that the focus of the claims was not on an improved server where "the server is described simply in terms of performing generic computer functions such as storing, receiving, and extracting data," using "vague terms without any meaningful limitations."); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1364 (Fed. Cir. 2015) (explaining that a claim implemented on a computer does not "elevate[ ] an otherwise ineligible claim into a patent-eligible improvement."). The specification confirms that these generic components were known in the prior art, and nothing in the claims or the specification restricts the use of these generic components to a particular configuration or unconventional use. ('479 patent, cols. 1:51-2:3; 2:26-51; 4:46-58)

      Nor does claim 1 specify how the claimed apparatuses are rendered capable of streamlining functions that previously required more than one device. Both representative claim 1 and the specification of the '479 patent describe the functions of the group server, the presence server, and the presence information management apparatus to include sending information and receiving information, which are standard functions of a generic computer server. ('479 patent, cols. 2:26-58; 15:64-16:11) As in *Intellectual Ventures I LLC v. Erie Indemnity Co.*, the focus of claim 1 of the '479 patent is not on how the group server, the presence server, and the presence information management apparatus actually function to alter the sharing of presence information in a way that improves the technology of the server components. 850 F.3d 1315, 1328 (Fed. Cir. 2017) (concluding that XML-specific tags in the index did not amount to an improvement to the technology where the claims called for the XML tags without further detail). To the contrary, representative claim 1 does not offer any technical insight as to how the claimed server components perform the claimed steps of acquiring and receiving group presence information.

('479 patent, cols. 15:64-16:11)  Such standard functions performed by generic computer components "do[ ] not sufficiently describe how to achieve [the claimed] results in a non-abstract way."  *Two-Way Media*, 874 F.3d at 1337.

The specification of the '479 patent explains that the group server and the presence server operated independent of each other in prior art systems, resulting in a "lengthy and inconvenient" process "for sharing presence information in the group."  ('479 patent, cols. 1:51-2:3)  The specification further explains that the claimed invention represents an advantage over the prior art because "the members in one group are enabled to share the presence information of each other conveniently."  (*Id.*, cols. 2:59-3:2)  But reliance on generic server components to perform tasks more efficiently does not render the claims patent eligible.  *See OIP Techs.*, 788 F.3d at 1363 (concluding that "relying on a computer to perform routine tasks more quickly or more accurately is insufficient to render a claim patent eligible," where the "key distinguishing feature of the claims is the ability to automate or otherwise make more efficient traditional price-optimization methods."); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015) ("[O]ur precedent is clear that merely adding computer functionality to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea.").

A comparison of claim 1 of the '479 patent to claims found to be abstract by the Federal Circuit supports the court's recommendation.  The claimed method of acquiring and sending group presence information via one of a selection of generic server components is comparable to a line of Federal Circuit cases holding that "claims reciting the collection, transfer, and publishing of data are directed to an abstract idea."  *Cellspin*, 927 F.3d at 1315 (citing *Elec. Power*, 830 F.3d at 1353;  *TLI*, 823 F.3d at 610-12); *see also Intellectual Ventures I LLC  v. Erie*

*Indemnity Co.*, 850 F.3d 1315, 1327 (Fed. Cir. 2017) (concluding that the invention was drawn to the abstract idea of "creating an index and using that index to search for and retrieve data," which encompassed "longstanding conduct that existed well before the advent of computers and the Internet."). Similarly, claims directed to data processing steps, implemented with generic computer technology, are routinely found ineligible. *See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l. Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (concluding that claims which were drawn to the abstract idea of collecting, recognizing, and storing data recited well-known concepts capable of being performed by humans); *TDE Petroleum Data Sols., Inc. v. AKM Enters., Inc.*, 657 F. App'x 991, 993 (Fed. Cir. 2016) (concluding that claims directed to collecting information and analyzing it using operations performed by a general-purpose computer were abstract).

        **2.**    *Alice* **step two**

At step two, the court must ask if the claim's elements, either considered individually or taken together, recite an "inventive concept" that amounts to significantly more than the abstract idea itself. *Alice*, 573 U.S. at 217 (internal quotation marks and citation omitted). And in doing so, the court must be mindful that if the only alleged inventive concept in the claims involves the application of the abstract idea using "conventional and well-understood techniques[,]" then the claim has not been transformed into a patent-eligible application of an abstract idea. *Cellspin*, 927 F.3d at 1316 (internal citation and quotation marks omitted).

Defendant contends that the asserted claims of the '479 patent lack an inventive concept because they require known, generic computer components functioning in a routine and conventional manner. (D.I. 17 at 15) Defendant emphasizes the fact that the three server

11

components identified in the '479 patent can be used interchangeably to perform routine functions without specific programming or configuration. (*Id.* at 16-17)

In response, Plaintiff contends that the asserted claims provide an inventive concept when the claim elements are viewed as an ordered combination because they identify a particular arrangement of elements that improves the efficiency and speed of the underlying processes of sharing group information. (D.I. 21 at 10-11) According to Plaintiff, the question of whether the claimed invention was well-understood, routine, or conventional is a question of fact to be resolved at a later time. (*Id.* at 11-12)

Representative claim 1 of the '479 patent does not contain an inventive concept. As previously discussed at § IV.A.1, *supra*, the claimed group server and presence server were known in the prior art. ('479 patent, cols. 1:51-2:3) The '479 patent describes the group server, the presence server, and the presence information management apparatus in purely functional terms, such as "acquiring" and "sending," without identifying any technical improvements to the server components. (*Id.*, cols. 2:23-51) Absent specific, claimed changes to the structure or function of the server components, these elements amount to generic computer components which cannot provide an inventive concept at step two of the *Alice* inquiry. *Intellectual Ventures I LLC v. Erie Indem. Co.*, 711 F. App'x 1012, 1018-19 (Fed. Cir. 2017).

Furthermore, the limitations of representative claim 1 do not reflect a particular "ordered combination" that would render the claim inventive. *See Cellspin*, 927 F.3d at 1316. In fact, both the claim language and the written description indicate that each of the presence server, the group server, and the presence information management apparatus are interchangeable and can be used to perform the same functions. ('479 patent, cols. 4:46-58; 15:64-16:11) (explaining that the group server, the presence server, and the group presence information management apparatus

12

are each capable of sending the group presence information). No specific order of steps applicable to each of the claimed server components is outlined in representative claim 1 to describe how the desired result is achieved. (*Id.*, cols. 15:64-16:11) Moreover, the specification expressly contemplates persons of ordinary skill in the art will "change or modify the present invention," and "any modification, equivalent replacement or improvement . . . shall fall into the protection scope of the present invention." (*Id.*, col. 15:54-62) The interchangeability of the server components, and the ability of a person of ordinary skill in the art to modify the invention without exceeding the scope of the claims, demonstrate that the group server, program server, and presence information management apparatus lack a specific, inventive configuration.

In this regard, claim 1 of the '479 patent is distinguishable from the claims at issue in *BASCOM Global Internet Services., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). In *BASCOM*, the Federal Circuit concluded that the asserted claims required a specific, unconventional arrangement of otherwise conventional features that altered and improved the function of the claimed filtering process. *Id.* In contrast, claim 1 of the '479 patent does not require a particular arrangement or ordered set of steps to be performed by the group server, the presence server, or the presence information management apparatus. ('479 patent, cols. 15:64-16:11) The arrangement set forth at Figure 4 of the '479 patent represents a single embodiment that is significantly narrower than the language of claim 1. (*Id.*, Fig. 4) Moreover, the Federal Circuit in *BASCOM* determined that the claims were "more than a drafting effort designed to monopolize the abstract idea." *BASCOM*, 827 F.3d at 1350. In contrast, the '479 patent openly permits persons of ordinary skill in the art to modify the claimed features while simultaneously asserting patent protection over any such changes that are made.

13

### B.      Notice of Infringement Under 35 U.S.C. § 287

In its opening brief, Defendant alleged that the instant litigation should be dismissed under 35 U.S.C. § 287 because Plaintiff failed to provide adequate notice of infringement prior to the expiration of the '479 patent. (D.I. 17 at 19) Defendant subsequently dropped its Section 287(a) notice challenge in its reply brief based on Plaintiff's representation that it is only asserting method claims 1 and 3 of the '479 patent. (D.I. 23 at 10) Defendant seeks to reserve its right to pursue its Section 287(a) challenge should Plaintiff subsequently assert apparatus claims or other claims in the '479 patent. (*Id.*)

Because the court recommends granting Defendant's motion to dismiss under Section 101, and because Defendant has indicated it does not intend to pursue its notice argument under Section 287 as it pertains to claims 1 and 3 of the '479 patent, the court need not reach the parties' arguments on this point.

### V.      CONCLUSION

For the foregoing reasons, I recommend that the court GRANT with prejudice[4] Defendant's motion to dismiss pursuant to Rule 12(b)(6). (D.I. 16)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1

---

[4] The record reflects that Plaintiff has amended its complaint once in response to a similar, previous challenge by Defendant (D.I. 8; D.I. 14), and Plaintiff has not requested leave to amend in its answering brief to the instant motion to dismiss (D.I. 21).

(3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

       The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: July 23, 2020                 _____
                                                    Sherry R. Fallon
                                                      UNITED STATES MAGISTRATE JUDGE